```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
ANDREA S. JONES,                                  :
                                                  :
                            Plaintiff,            :
                                                  :
       -against-                                  :        MEMORANDUM & ORDER
                                                  :        11-CV-04857 (SMG)
AMR AMERICAN AIRLINES, INC.,                      :
                                                  :
                            Defendant.            :
                                                  :
------------------------------------------------------------------- x
```

GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

Plaintiff Andrea S. Jones, who is proceeding pro se, brings this action alleging discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e to 2000e-17; Docket Entry 1, Complaint ("Compl."). Plaintiff alleges that American Airlines, Inc. ("American Airlines") discriminated against her on account of her race, gender, and color and subjected her to a hostile work environment by employing and not terminating an individual who made an inappropriate racial comment about her. Compl. at 3 ¶ 7, 6 ¶¶ 4-5. Plaintiff complained to both American Airlines and the United States Equal Employment Opportunity Commission ("EEOC"). Compl. at 4 ¶ 10, 6-7 ¶ 5. The EEOC issued a Dismissal and Notice of Right to Sue to plaintiff on June 27, 2011. Compl. at 8-9. Plaintiff filed this action on October 3, 2011. Defendant now moves for summary judgment. Docket Entry 56. The parties have consented to the assignment of this case to me for all purposes. Docket Entries 50, 51. For the reasons stated below, defendant's motion for summary judgment is granted.

## FACTS

The parties have submitted statements of material facts pursuant to Local Civil Rule 56.1. *See* Docket Entries 56-7, Defendant's Rule 56.1 Statement ("Def. 56.1"); 64-2, Plaintiff's Rule 56.1 Statement ("Pl. 56.1").  Plaintiff, however, has failed to comply fully with the requirements of the rule.  Local Rule 56.1(a) states that a party moving for summary judgment must provide "a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried."  Defendant has done so.  Def. 56.1.  The rule further requires the party opposing summary judgment to submit a response to each numbered paragraph in the statement of the moving party, and if necessary, a "short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civil Rule 56.1(b).  Each statement must be followed by citation to admissible evidence.  Local Civil Rule 56.1(d).  Plaintiff has submitted a counter-statement of material facts, but it includes neither statements of additional material facts nor citations to admissible evidence.  Pl. 56.1.

A Court may consider any facts not properly controverted as admitted.  Local Civil Rule 56.1(c).  However, papers submitted by a party proceeding pro se must be liberally construed. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Accordingly, I overlook any failure of plaintiff to fully comply with Local Civil Rule 56.1 and evaluate defendant's motion in light of any facts in the parties' submissions and exhibits that would be admissible if put forth at trial.

The pertinent facts are largely undisputed.[1]  American Airlines Group, Inc. ("AAG") is a publicly traded holding company.  Def. 56.1 ¶ 1.  Defendant American Airlines and Envoy Air

---

[1] The facts set forth in the text are undisputed unless otherwise indicated and are drawn primarily from Defendant's Local Rule 56.1 Statement of Undisputed Facts as well as plaintiff's Complaint, her deposition testimony, and her Affirmation in Opposition to Motion for Summary Judgment.  Docket Entries 1, 56-7, 65, 69.

Inc., which does business as "American Eagle," are both wholly owned subsidiaries of AAG.[2] Def. 56.1 ¶ 2. American Airlines asserts that it has no authority to hire, supervise, discipline, or terminate American Eagle's employees. Def. 56.1 ¶ 4. American Airlines further states that it does not include any American Eagle employees on its payroll or maintain personnel records for American Eagle's employees. Def. 56.1 ¶ 5.[3]

American Airlines has employed plaintiff, Andrea S. Jones, who is African-American, as a flight attendant since 2000. Def. 56.1 ¶ 6. Plaintiff's complaint arises out of a comment that she contends was made by Janice Barnikow, an American Airlines employee, sometime between 2009 and 2011 while Barnikow was on furlough from American Airlines and working for American Eagle and attending an American Eagle training class. Def. 56.1 ¶ 8; Compl. at 6 ¶ 4; Jones Dep., Docket Entry 69-1, 56:17-57:23. Plaintiff was not present, but heard from "people" who "were talking" that, during the class, Barnikow referred to her as a "black bitch." Def. 56.1 ¶¶ 8, 10; Compl. at 6 ¶ 4; Jones Dep. 58:9-22. Around May 23, 2011, plaintiff became aware that Barnikow was again working as a flight attendant for American Airlines. Def. 56.1 ¶ 11; Compl. at 6 ¶ 4; Jones Dep. 77:2-23. On May 26, 2011, plaintiff sent an email to her manager questioning how it was possible for Barnikow to be employed by American Airlines after making a racially derogatory comment. Def. 56.1 ¶ 12, Compl. at 6-7 ¶ 5; Compl. Exs., Docket

---

[2] Plaintiff asserts in her submissions that her claim is against AAG (formerly AMR). Docket Entry 23 at 1. Throughout this litigation, the appearing defendant has been American Airlines. Because this distinction does not affect the outcome of the case, I do not address it further.

[3] One fact that does appear to be genuinely in dispute is whether American Airlines refuses to allow individuals terminated by American Eagle for violating company policy to work at American Airlines. Defendant maintains that, although they are wholly owned subsidiaries of the same parent company, American Airlines and American Eagle are independent companies with individual headquarters, management teams, and personnel policies. Def. 56.1 ¶ 3. American further asserts that it lacks authority to supervise, discipline or terminate employees of American Eagle. Def. 56.1 ¶ 4. Plaintiff, however, alleges that her Flight Service manager, Madeline Collazo, admitted that "no one who is fired from American Eagle is permitted to work at American Airlines." Pl. Aff. In Opp. to Mot. For Summ. J., Docket Entry 65 at 1; Jones Dep. 134:3-16. For reasons discussed below, this dispute of fact is immaterial, and I therefore do not consider it. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Entry 1 at 22. Plaintiff complained to her supervisor, company representatives, and union representatives about Barnikow's employment. Def. 56.1 ¶ 13; Compl. at 6-7 ¶¶ 5-8. American Airlines did not terminate Barnikow for the discriminatory comment plaintiff alleges she made while at American Eagle; however, on September 19, 2011, American's Flight Service Purser Manager, Maria Rutigliano, met with Barnikow to remind her of American Airlines' commitment to diversity and equal opportunity and its refusal to tolerate discrimination and harassment, and to secure Barnikow's commitment to these policies. Def. 56.1 ¶ 14; Rutigliano Decl., Docket Entry 56-4.

Plaintiff specifically recalls only two encounters with Barnikow after the alleged incident during the American Eagle training class. Def. 56.1 ¶ 15; Jones Dep. 95:24-96:10. On July 31, 2011, plaintiff encountered Barnikow at LaGuardia Airport, where she was "civil and smiling" and attempted to greet plaintiff and engage her in conversation. Def. 56.1 ¶ 16; Jones Dep. 78:2-83:20. Plaintiff responded by asking, "Why are you speaking to me?" and walking away. Def. 56.1 ¶ 17; Jones Dep. 82:7-83:20. Plaintiff reported this encounter to American Airlines and asked, "when will she [Barnikow] be fired?" Compl. Exs., Docket Entry 1 at 17. Plaintiff alleges that, on a later date she cannot specifically recall, Barnikow called her a "bitch" without making reference to her race. Def. 56.1 ¶ 18; Jones Dep. 84:15-94:8. Plaintiff did not report this incident to American Airlines. Def. 56.1 ¶ 19; Jones Dep. 94:21-95:23.

Plaintiff complained by telephone to the EEOC about Barnikow. Def. 56.1 ¶¶ 20, 24; Jones Dep. 18:19-21:5. The EEOC notified American Airlines that plaintiff had filed a Charge of Discrimination and that the allegations were limited to harassment on the basis of race. Def. 56.1 ¶ 28; Vickerman Decl. and EEOC Notice of Charge of Discrimination, Docket Entry 56-5.

4

On June 27, 2011, the EEOC issued a dismissal and Notice of Rights. Def. 56.1 ¶ 29; Compl. Exs., Docket Entry 1 at 8.

In addition to her complaints about Barnikow, Plaintiff alleges that former TWA flight attendants who are currently employed by American Airlines maintain a secret website that they use to harass and libel her. Def. 56.1 ¶ 25; Compl. at 7 ¶ 8. Plaintiff has only seen content from the website twice, though, and on neither occasion did the website reference race; in fact, on one occasion, it did not even reference plaintiff. Def. 56.1 ¶ 27; Jones Dep. 118:2-125:12. Plaintiff does not recall mentioning the website in her complaint to the EEOC. Def. 56.1 ¶ 26; Jones Dep. 37:18-39:17. On the first occasion, the material referenced another American Airlines employee and encouraged people not to vote for him in a union election. Jones Dep. 118:2-18. On the second occasion, another flight attendant gave plaintiff a printout that purportedly came from the website and said, "harassed by flight attendant Andrea Jones," but the paper is no longer in plaintiff's possession. Jones Dep. 119:5-122:9. Plaintiff also alleges that she was told by other flight attendants that the website contained information detailing steps that people could take to get plaintiff fired. Jones Dep. 122:10-123:17.

Finally, plaintiff maintains that, since filing this lawsuit, she has been subjected to a constant stream of retaliation and discrimination, stating, "my life became tougher at American. Like they were trying to drive me insane. Just like everything became an issue. Just picking on me. They don't pick on anyone else. The never picked on [Barnikow]." Jones Dep. 150:9-14; *see also* Jones Dep. 146:18-153:9. When asked to identify specific instances of discipline imposed on her since filing this lawsuit, though, plaintiff stated only that she was frequently told to watch her delivery and tone and to be respectful of others, a directive that she claims was never given to other employees. Jones Dep. 152:18-155:10.

5

On October 8, 2015, plaintiff provided the Court with a new EEOC complaint she filed alleging that, since commencing this suit, she has been bullied into transferring home bases and demoted.  Docket Entry 67.  Plaintiff has not sought to amend her complaint to add these allegations or provided the Court with any indication that the EEOC has issued her a Notice of Right to Sue.

## DISCUSSION

### I.     Summary Judgment Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact" and that, in light of the undisputed facts, "it is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When evaluating the motion, the evidence presented must be viewed in the light most favorable to the party opposing summary judgment, and all reasonable inferences must be drawn in that party's favor.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 540 (S.D.N.Y. 2003).  Simply put, summary judgment must be denied "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

A party asserting that a fact either is or cannot be genuinely disputed must support that assertion by citing to material in the record.  Fed. R. Civ. P. 56(c)(1)(A).  The cited materials must be presented in a form that would be admissible in evidence at trial; thus, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out

6

facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(2) and (4).

Because plaintiff is proceeding pro se, the Court is required to view her submissions using a somewhat more lenient standard than if they were drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). This leniency is warranted because "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Nevertheless, the right to proceed pro se "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (internal citations and quotations omitted). Accordingly, plaintiff is bound by the well-settled case law holding that facts asserted in opposition to summary judgment must be supported by citation to admissible evidence, and that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.[4]

## II.  Hostile Work Environment

Plaintiff asserts a hostile work environment claim predicated on race discrimination.[5] Title VII states that "[i]t shall be an unlawful employment practice for an employer (1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or

---

[4] Plaintiff was served with the Notice to Pro Se Litigant who Opposes a Motion for Summary Judgment required by Local Civil Rule 56.2. See Docket Entry 56-9.

[5] In her complaint, plaintiff alleges discrimination based on race, gender, and color; her complaint to the EEOC, though, was limited to discrimination on the basis of race. Compl. at 3 ¶ 7; Pl. 56.1 ¶ 28; EEOC Notice of Charge, Docket Entry 56-5 (indicating only race under "circumstances of alleged discrimination"). Plaintiff likewise testified at her deposition that her suit is limited to discrimination based on race. Jones Dep. 146:6-12. Therefore, plaintiff's suit is limited to allegations of discrimination based on race. *EEOC v. Sterling Jewelers, Inc.*, 2010 WL 86376, at *3 (W.D.N.Y. Jan. 6, 2010) (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1166 (10th Cir. 2007)).

7

privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). To be actionable under Title VII, workplace harassment based on race must be "so severe and pervasive as to alter Plaintiffs' conditions of employment." *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 262 (E.D.N.Y. 2005) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) and *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)). Moreover, the harassment must in some way be attributable to the employer. Thus, to succeed on a claim of racial harassment premised on a hostile work environment, "a plaintiff must establish two elements: (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment," and "(2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Stepheny*, 356 F. Supp. 2d at 262 (quoting *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004)) (internal citation and quotations omitted).

The determination of whether a hostile environment is so severe as to give rise to a legal claim "has both an objective and a subjective component: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" *Mark v. Brookdale Univ. Hosp.*, 2005 WL 1521185, at *20 (E.D.N.Y. 2005) (quoting *Petrosino*, 385 F.3d at 221). Relevant factors include "the frequency of the conduct, its severity, whether it was physically threatening, and whether it interfered with the employee's work performance." *Stepheny*, 356 F. Supp. 2d at 262. "Conduct that is 'merely offensive' and 'not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) (internal citations omitted). Accordingly, the "mere utterance of

8

an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal citations and quotations omitted). Rather, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity." *Id.* (internal citations and quotations omitted).

    A.  *Whether the Harassment Was Based on Plaintiff's Race*

Plaintiff complains about one incident of name calling involving a reference to her race. The comment is attributed by plaintiff to Janice Barnikow, who was not employed by defendant at the time it was made. Moreover, plaintiff did not herself hear the allegedly racist remark and has not submitted an affidavit from anyone who did. Plaintiff recalls only two subsequent encounters with Barnikow, only one of which she reported to American Airlines. During the first incident plaintiff was dismissive in response to Barnikow's attempt to be polite and conversational with her. On the second, unreported occasion, plaintiff claims that Barnikow called her a bitch, but made no reference to her race.

In addition to her complaints about these interactions with Barnikow, plaintiff makes allegations about a secret TWA website. Plaintiff, though, has never accessed the website and has only seen pages purportedly printed from it, none of which made any reference to race. Furthermore, plaintiff testified that she believes that the website says negative things about all American Airlines flight attendants, and that the website specifically hosted negative comments about two other flight attendants, Laz and Sharon, who are Latino and Caucasian. Jones Dep. 127:9-129:5. At one point during her deposition, plaintiff testified in response to questioning about the secret website as follows:

> Q: Did you think that – well, do you contend that the piece of paper you saw that said that you harassed flight attendants was put together because you're black?

9

A: I sure hope not. I don't know why they put it together. I hope not."

Tr. 124:17-23.

As these facts demonstrate, the evidence supports an inference of race discrimination only with respect to one remark made by Barnikow, made at a time when Barnikow was employed elsewhere.

B.  *Whether the Conduct Was Severe or Pervasive*

As discussed above, plaintiff's hostile work environment claim is deficient because, with the exception of one comment, she does not allege any harassment based on her race, and because plaintiff lacks personal knowledge of the one alleged race-based comment as well as much of the other harassment she describes. Plaintiff's claim would fail even absent these deficiencies because the harassment she alleges was not sufficiently severe or pervasive to be actionable. Plaintiff plainly alleges that she subjectively perceives her work environment to be abusive. Compl. at 7 (alleging that defendant has rendered her workplace "unsafe and vicious" and that the impact on her "is emotionally draining and torturing"). However, a hostile work environment claim also requires proof that a workplace is objectively abusive. *Mark*, 2005 WL 1521185, at *20. Plaintiff's claim is predicated on Barnikow's utterance of "black bitch" one time, outside of plaintiff's presence, and while employed by a different airline. Even when viewed in the context of the additional harassment alleged—the two in-person interactions with Barnikow and the two sightings of content from the website—plaintiff's claim fails as a matter of law. Plaintiff complains of a total of five incidents, only one of which had any racial aspect. These events, even assuming they occurred just as plaintiff contends, simply cannot support a finding that plaintiff confronted an objectively hostile work environment.

10

Facts similar to those alleged here were presented in *Khan v. Abercrombie & Fitch, Inc.*, 35 F. Supp. 2d 272, 277 (E.D.N.Y. 1999) *aff'd*, 201 F.3d 431 (2d Cir. 1999). In *Khan*, plaintiff was referred to as a "black bitch" on one occasion by a coworker. The Court granted summary judgment to the employer, holding that plaintiff's "single allegation of discrimination does not give rise to a claim of hostile work environment." *Khan*, 35 F. Supp. 2d at 277*; see also*, *e.g.*, *Richardson*, 180 F.3d at 440 (allegations are insufficient as a matter of law where only three out of fifteen incidents have any racial overtones); *Williams v. Cty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999) (noting that a hostile work environment claim requires "more than a few isolated instances of racial enmity")(citation omitted); *Stepheny*, 356 F. Supp. 2d at 264 (holding that a co-worker's utterance of a comment with racial overtones five times over five months when viewed in context fails as a matter of law); *Abidekun v. NYC Transit Auth.*, 1998 WL 296372, at *6 (E.D.N.Y. June 4, 1998) (dismissing plaintiff's claim that a supervisor on one occasion called him a foreigner and made reference to his accent).

### C. Whether Defendant's Response to the Alleged Harassment Was Effective and Remedial

Even if plaintiff had raised material issues of fact about whether she was subjected to harassment based on her race and whether that harassment was severe or pervasive, her claim would still fail because she has not raised a material issue of fact about whether defendant failed to take effective and remedial action in response to her complaints. An employer that knows of a hostile work environment has a duty to take reasonable steps to remedy it. *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (citing *Snell v. Suffolk Cty.*, 782 F.2d 1094, 1104 (2d Cir. 1986)). Because plaintiff and her alleged harasser are co-workers, defendant

11

may be found liable only if it "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray*, 57 F.3d at 249 (internal citations omitted).

Defendant has a complaint procedure and an anti-discrimination policy, which plaintiff knew about and invoked. Compl. at 6-7, 14-23, 25-29; Jones Dep. 176:10-177:10. Accordingly, unless defendant failed to take reasonable steps to address plaintiff's complaint of harassment, it may not be held liable. The evidence is undisputed, though, that defendant responded to plaintiff's complaints. Maria Rutigliano, employed by American at the relevant time as a Flight Service Purser Manager, met with Janice Barnikow on or about September 19, 2011, advised her of defendant's commitment to diversity and equal opportunity in the workplace, and secured Barnikow's commitment to complying with American Airlines' policies. Def. 56.1 ¶ 14; Rutigliano Decl., Docket Entry 56-4.[6] Following her complaints, plaintiff interacted with Barnikow only twice. Def. 56.1 ¶ 15. During the first interaction, which occurred before Rutigliano met with her, Barnikow was civil and polite to plaintiff. Def. 56.1 ¶ 16; Jones Dep. 78:2-84:4. On the second occasion, which plaintiff did not report to defendant, Barnikow allegedly called plaintiff a "bitch." Def. 56.1 ¶ 18.

American Airlines had no reason to suspect that Rutigliano's meeting with Barnikow was anything but successful because the single negative interaction that plaintiff claims she had with Barnikow after the meeting went unreported. The documents plaintiff submits to demonstrate that she complained to American Airlines each predate defendant's meeting with Barnikow. Compl. Exs. at 11-23. Finally, although plaintiff also complains of constant harassment emanating from the secret TWA website, she has not identified any facts that would be admissible at trial to support her allegations.

---

[6] Although plaintiff disputes paragraph 14 of defendant's Rule 56.1 statement, she does not cite to any evidence that contradicts the representations in Rutigliano's declaration, and there appears to be none in the record submitted by the parties in connection with the pending motion.

12

The evidence thus shows that defendant investigated and took reasonable remedial action in response to plaintiff's complaint.  While plaintiff argues that Barnikow should have been terminated, Compl. at 7 ¶ 6, the law does not require such a result.  *Gonzalez v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 355 (S.D.N.Y. 2003) (holding that an employer's remedy "need not necessarily expel the harasser from the work environment to be effective, but rather it should be 'sufficiently calculated to end the harassment.'") (quoting *Murray*, 57 F.3d at 250).  Crediting plaintiff's version of the facts, the only behavior by Barnikow with racial overtones occurred while Barnikow was employed by American Eagle, and Barnikow's employment with American Eagle was terminated.  Compl. at 6 ¶ 4.  With respect to American Airlines, there is no evidence that Barnikow engaged in any race-based harassment after her meeting with Rutigliano.  Accordingly, plaintiff has failed to adduce evidence sufficient to support her hostile work environment claim.

### III. Defendant's Other Arguments for Dismissal

Defendant raises several additional grounds for dismissal.  Defendant argues that plaintiff failed to exhaust her administrative remedies, that plaintiff's complaint to the EEOC was untimely, and that there is no basis to impute any liability for Barnikow's statement to American Airlines.  Because I conclude for the reasons discussed above that summary judgment is warranted on the merits, I do not reach these additional arguments.

### IV. Post-Lawsuit Allegations

Plaintiff alleges that, after filing this lawsuit, she was pressured into transferring bases.  Docket Entry 65 at 2 (after complaining to her union and being advised to transfer bases, plaintiff stated: "I voluntarily transferred to Miami for the sake of my own sanity . . . ."); Jones Dep. 168:10-169:3 ("I transferred to get away from them.  It's not voluntary.  It [sic] was run out, when you were [sic] run out of somewhere").  Plaintiff has also submitted a copy of a

13

complaint that she filed with the EEOC alleging retaliation by defendant following the commencement of this lawsuit. Docket Entry 67. Plaintiff contends in her EEOC complaint that she "was bullied into resigning from her position at work," but it is clear from the entire document that, while plaintiff contends she was forced to change positions, she remains employed by defendant. For example, plaintiff states in the same document that "[t]o this day, I still have the same supervisor" and contends that "I am harassed and tarnished daily." Docket Entry 67 at 1, 3. Plaintiff has not submitted a Notice of Right to Sue from the EEOC with respect to her more recent claim, nor has she sought to amend her complaint or filed any pleading in this Court alleging a retaliation claim. Accordingly, the fact that plaintiff has filed a new EEOC complaint is not a basis for denying defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in all respects. The Clerk of Court shall enter judgment accordingly.

SO ORDERED.

_____/s/_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
6/10/2016

U:\AJC 2015-2016\Jones v. AMR\Jones v. AMR Final.docx